Filed 4/13/23  P. v. Robinson CA5

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FIFTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ANGELA RENEE ROBINSON,<br><br>    Defendant and Appellant. | F084033<br><br>(Super. Ct. No. BF187220A)<br><br><br>**OPINION** |

-ooOoo-

## THE COURT<sup>*</sup>

APPEAL from an order of the Superior Court of Kern County.  Chad A. Louie, Judge.

Linda J. Zachritz, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, Darren K. Indermill, and Erin Doering, Deputy Attorneys General, for Plaintiff and Respondent.

-ooOoo-

---

\*     Before Levy, Acting P. J., Poochigian, J. and Detjen, J.

Defendant Angela Renee Robinson was charged with several criminal offenses. Her defense counsel expressed doubt regarding her competency to stand trial. After having her evaluated by a doctor, the trial court found defendant not competent to stand trial and ordered her committed to the California Department of State Hospitals. On appeal, defendant contends that the trial court should have appointed a second doctor to evaluate her competence to stand trial pursuant to Penal Code section 1369[1] because she told the court she did not seek a finding of incompetence to stand trial. Alternatively, she contends that even if her statements were insufficient to trigger a statutory duty for the court to appoint a second doctor to evaluate her, they created a "due process duty" for the court to inquire regarding whether she sought a finding of incompetence. The People disagree with defendant's factual contention that she informed the court that she did not seek a finding of incompetence to stand trial and argue that defendant cannot demonstrate any prejudice from the purported due process violation. We affirm.

## PROCEDURAL SUMMARY

On October 12, 2021, the Kern County District Attorney filed an information charging defendant with burglary (§ 460, subd. (a); count 1), maliciously throwing a caustic chemical with intent to injure (§ 244; count 2), obstructing a law enforcement officer (§ 69; count 3), attempted mayhem (§§ 664, 203; count 4), battery (§ 243, subd. (a); count 5), and resisting arrest (§ 148, subd. (a)(1); count 6). As to count 1, the information further alleged that the residence was occupied during the burglary (§ 667.5, subd. (c)(21)).

On November 19, 2021, defendant's counsel expressed doubt as to her competency and requested an evaluation pursuant to section 1368. The court inquired regarding whether defendant was agreeable with the competency determination or

---

[1] All further undesignated statutory references are to the Penal Code except as otherwise stated.

2.

whether the court should appoint two doctors to perform evaluations. Defendant responded, "I agree, sir." The court then appointed one doctor to perform a competency evaluation of defendant.

On December 8, 2021, a clinical psychologist submitted her report summarizing her evaluation of defendant and recommending that she be found incompetent to stand trial. That report contained a comment attributed to defendant that "she had done this before and she is competent to stand trial and definitely does not want to go to Patton [State Hospital] again."

On December 10, 2021, defendant's counsel presented no argument and "submit[ted]" on the psychologist's report and defendant voiced no objection. The trial court then found defendant not competent to stand trial.

On January 3, 2022, the trial court committed defendant to the California Department of State Hospitals for a maximum term of two years.

On February 28, 2022, defendant filed a notice of appeal.

### FACTUAL SUMMARY[2]

On September 7, 2021, defendant was housed at a residential facility serving the mentally ill. Defendant entered the room of a male resident of the same facility. She lit a cigarette and the male resident told her she had to put the cigarette out. Defendant became "very irrate [*sic*]." She threw the cigarette to the floor and stomped on it. She then picked up a bleach bottle and poured it over the male resident's head. She began "rubbing bleach onto his face and in his eyes with her hands." She hit the male resident on the head several times with her fists and then hit him with the bleach bottle. The male resident exited the room, informed the staff of what had occurred, and called 911.

---

**2** Our factual summary is drawn from the evaluating psychologist's report.

3.

Officers were dispatched at approximately 6:30 p.m. When they arrived, they found the male resident outside of the facility. They noted chemical burns on the back and sides of his neck from the bleach.

Officers then interviewed defendant and determined that, based on her mental condition, she was a danger to herself and others. They placed her on a 72-hour mental health hold (Welf. & Inst. Code, § 5150). When the officers told defendant that they were taking her to a mental health facility, she "began screaming, 'Stop doing this to me. Stop putting me in mental hospitals.' " As one of the officers approached defendant, she swung at him with her right hand. As officers subdued defendant, she resisted. Once defendant was in handcuffs, the officers directed her to sit on the curb. She refused and attempted to strike an officer with the back of her head. Defendant was then placed in the officers' patrol vehicle without further incident.

## DISCUSSION

Section 1368 creates an ongoing obligation for a trial judge to state any doubts regarding a defendant's competence on the record and "inquire of the attorney for the defendant whether, in the opinion of the attorney, the defendant is mentally competent." (§ 1368, subd. (a).) Defense counsel shares a similar obligation. (§ 1368, subd. (b).) If doubt as to a defendant's sanity is stated, section 1369 requires the trial court to "appoint a … licensed psychologist" to evaluate the defendant's competency unless "the defendant or the defendant's counsel informs the court that the defendant is not seeking a finding of mental incompetence," in which case the court shall appoint two doctors. (§ 1369, subd. (a)(1).)

In this case, defendant's trial counsel expressed a doubt as to defendant's competency. The trial court inquired regarding whether defendant was "agreeable with" the evaluation or if it should, "in an abundance of caution, order an evaluation by two doctors." Defendant responded, "I agree, sir." The court therefore appointed the psychologist to evaluate defendant.

4.

During the evaluation, defendant told the psychologist that she had been through the competency evaluation process before, was "competent to stand trial[,] and definitely [did] not want to go to Patton" State Hospital. At the hearing scheduled for defendant's competency determination, neither defendant nor her counsel voiced any disagreement with the trial court's finding of incompetence. Indeed, her counsel simply submitted on the report. Defendant contends that her statement to the psychologist was sufficient to require the court to order a second doctor to evaluate her pursuant to section 1369, subdivision (a)(1). We disagree.

As noted, subdivision (a)(1) of section 1369 required the trial court to appoint a second doctor only "[i]f the defendant or the defendant's counsel informs the court that the defendant is not seeking a finding of mental incompetence." Courts have read that language to require that a defendant or their counsel "must 'expressly inform[] the court during the competency hearing that [the] defendant [is] not seeking a finding of incompetence' to trigger the requirement that the trial court appoint a second mental health expert." (*People v. Leelu* (2019) 42 Cal.App.5th 1023, 1030 (*Leelu*).) Neither defendant nor her counsel informed the court that defendant was not seeking a finding of mental incompetence. Before the psychologist was appointed, defendant's counsel voiced concerns about defendant's competence and defendant agreed to the evaluation. On the date of the competency hearing, defendant voiced no desire to not be found incompetent to stand trial and her counsel "submit[ted]" on the psychologist's report. Defendant's comment to the psychologist did not trigger the court's obligation to appoint a second doctor.

Even assuming defendant's statement to the psychologist was sufficient to trigger the trial court's obligation to appoint a second doctor, any error was harmless. In this context, it is a defendant's burden to show prejudicial error justifying reversal. (*Leelu*, *supra*, 42 Cal.App.5th at pp. 1031–1032.) To do so, the defendant "must 'demonstrate there is a reasonable probability that in the absence of the error he or she would have

5.

obtained a more favorable result' "; to wit, that there is a reasonable probability the trial court would have found defendant competent to stand trial had it appointed a second doctor. (*Ibid.* [a defendant's right to appointment of a second doctor is a state statutory right rather than a federal constitutional right, therefore the standard of *People v. Watson* (1956) 46 Cal.2d 818, applies].)

The People raised the issue of the absence of any prejudice in their brief. In defendant's reply brief, she responded that "her situation does not present an issue of prejudice." Defendant then proceeded to note that the record contains no instances of outbursts in the courtroom and contends that she "understood the court, its personnel and process." While defendant was able to describe the role of court personnel, the remainder of the psychologist's report demonstrated that defendant was not competent: she reported having suffered hallucinations regarding aliens attempting to control her, " 'IBOT[s],' " and ghosts; she claimed to see "people from the past" every time she went to court who scared her; she claimed that she hallucinated when she was on her period; she did not understand the nature of her crimes, describing that she poured bleach on the male resident because he had a rash on his face and eyes that was spread by sexual intercourse or kissing; she mentioned that her father had just died; "made bizarre comments about her father and mother 'moving to the desert,' " and told the psychologist that she hears her father's voice in jail; and she suggested that " 'desert people,' " including some unspecified attorney in the proceeding, were upset with her and wanted her to stay in the area. Based on the psychologist's report, there is no reasonable probability that appointment of a second doctor would have resulted in the trial court finding that defendant had the "ability to assist counsel in the conduct of a defense in a rational manner …" and therefore would not have changed the outcome of the proceeding. (§ 1369, subd. (a)(2)(A).)

Because any error in the trial court's failure to appoint a second doctor—required only by state statute rather than constitutional mandate—caused defendant no prejudice, her due process claim also fails.  (See *Leelu*, *supra*, 42 Cal.5th at pp. 1031–1032.)

## **<u>DISPOSITION</u>**

The order is affirmed.